HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN MARTIN,

Plaintiff,

v.

JOHNSON CONTROLS FIRE PROTECTION, LP,

Defendant.

NO. 2:19-cv-00514-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Brian Martin's ("Plaintiff" or "Martin") motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. Dkt. # 21. Defendant Johnson Controls Fire Protection, LP ("Defendant" or "Johnson Controls") opposes the motion. Dkt. # 29.

Plaintiff requested oral argument, but the Court finds oral argument unnecessary in light of the parties' briefings and submissions. For the reasons stated herein, the Court **GRANTS** Plaintiff's motion.

## II. BACKGROUND

Johnson Controls is a fire protection and detection company that provides fire detection, sprinkler and suppression system, and security and building communication services to customers worldwide. Dkt. # 21 at 3. In 2016, its predecessor,

SimplexGrinnell, LP, signed a Master Contract with the Washington State Department of Enterprise Services ("DES"). *Id.* at 3-4. Under that contract, SimplexGrinnell agreed to repair, inspect, and test fire detection and suppression systems and backflow preventers in state facilities and local government entities, such as cities and school districts. *Id.* The contract was extended and assigned to Johnson Controls following its merger with SimplexGrinnell. *Id.*

Plaintiff has worked as a fire alarm and sprinkler system inspector for almost 25 years. Dkt. # 21 at 9. He was hired by SimplexGrinnell in 2011 and has been employed by Johnson Controls as a sprinkler inspector in Washington state since 2016. Dkt. # 21 at 9. In his complaint, Plaintiff alleges that Defendant's contract with the state requires Defendant to pay inspectors prevailing wage under the state's Prevailing Wage Act ("PWA") and that Defendant's failure to do so and to pay the correct overtime rate constitutes a violation of RCW 39.12.020, RCW 49.46.130, and RCW 49.29.010. Dkt. # 1-1 ¶ 4.2.

Under the PWA, "laborers, workers, or mechanics" working under public works or public building service maintenance contracts with the state must be paid at least the prevailing wage of the trade and locality in which they work. RCW 39.12.020. DES has specifically indicated that prevailing wage does not usually apply during fire alarm system inspections because "[c]ommon tools typically used by a 'laborer or mechanic' are not normally used during" such inspections. Dkt. # 30-1 at 2. DES guidance on non-prevailing wages states in relevant part:

> The scope of work performed when doing what is defined as "Inspections" is primarily a visual observation of the equipment to make sure it is still in good physical condition, as well as conducting a functional test of the equipment. Much of the testing doesn't involve any tools. Equipment being tested, such as a "fire alarm manual pull station," is generally manipulated by hand and reset with a key. No tools are required . . . . Prevailing wage is not called for in this type of work as

long as a Technician is not performing the following functions during an inspection:

- Work with tools
- Manual Labor
- Substitution of parts
- Replacement of parts or components

*Id.*

Defendant relies heavily on DES's description of non-prevailing wages in arguing that inspectors are not covered by the PWA because they do not perform manual labor nor use tools in the course of an inspection. Dkt. # 29 at 3. Defendant notes, however, that it pays prevailing wage to its employees who provide maintenance and repair work in compliance with the PWA. *Id.* Plaintiff refutes Defendant's claim about the nature of inspections, alleging that the testing and inspections that he and other inspectors of fire alarm, sprinkler, and suppression systems conduct "always involve[] manual labor . . . and almost always involve[] use of hand tools." Dkt. # 21 at 1. Indeed, Plaintiff explains that inspections of fire alarm systems, sprinkler system inspections, and dry systems all involve manual activities such as manual triggering of pull stations, manipulation of valves, and physical triggering of the inspectors' tests, among others. *Id.* at 15-16. Plaintiff also contends that hand tool use "is a regular and necessary part of these inspections." *Id.* at 16.

Plaintiff now moves the Court to certify a class of inspectors defined as follows:

> All individuals employed by Johnson Controls to conduct fire alarm, sprinkler, and fire suppression system inspections in state and local government buildings in the State of Washington at any time between March 5, 2016 and the date of the Order granting class certification in this matter.

*Id*. This class would be comprised of up to 149 inspectors. *Id.* at 14.

Plaintiff asserts that fire alarm, sprinkler, and suppression system inspectors have, in effect, suffered the same injury by being denied prevailing wage to which they are

entitled. The Court can address this common contention, according to Plaintiff, by determining whether the work performed by the inspectors is covered under the PWA. Dkt. # 21 at 15. Defendant disagrees, arguing that "[b]ecause all inspections are not identical, and because the work performed by the two individuals is so different even on the same inspection" (Dkt. # 29 at 2), the question posed by Plaintiff would require the Court to "make many of thousands of individualized factual determinations as to whether each putative class member performed covered work on each particular project on each particular day" (*id.* at 1). Defendant claims that the factfinder would have to consider the type of facility, the kind of system inspected, the role the inspector played in the inspection, what specific tasks the inspector performed, and whether the inspector needed to use tools on that particular inspection for each inspector. *Id.* at 14.

## III. LEGAL STANDARD

A court's decision to certify a class is discretionary. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Federal Rule of Civil Procedure 23 guides the court's exercise of discretion. A plaintiff "bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the [three alternative] requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) requires a plaintiff to demonstrate that (1) the proposed class is sufficiently numerous ("numerosity"); (2) it presents common issues of fact or law ("commonality"); (3) it will be led by one or more class representatives with claims typical of the class ("typicality"); and (4) the class representative will adequately represent the interests of the class ("adequacy"). *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); Fed. R. Civ. P. 23(a). If a plaintiff satisfies the Rule 23(a) requirements, he must also show that the proposed class action meets one of the three requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Here, Plaintiff seeks certification under Rule 23(b)(3). A class may be certified under this subdivision if (1) common questions of law and fact predominate over questions affecting individual members, and (2) if a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3). The "predominance" and "superiority" prongs of Rule 23 work together to ensure that certifying a class "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal citation and quotation omitted). A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole*, at 944 (quoting *Zinser*, 253 F.3d at 1189). Thus, the court must determine whether resolution of common questions would resolve a "significant aspect" of the class members' claims such that there is "clear justification" for class treatment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citations omitted).

In considering Rule 23's requirements, the court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in depth review of the record." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (citing *Falcon*, 457 U.S. 147, 161 (1982)). The court is neither permitted nor required to conduct a "preliminary inquiry into the merits" of the plaintiff's claims. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)); *see also* Fed. R. Civ. P. 23 advisory committee's note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."). *But see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (suggesting that Rule 23 analysis may be inextricable from some judgments on the merits in a particular case). The court may assume the truth of a plaintiff's substantive allegations but may require more than bare allegations to determine whether a

plaintiff has satisfied the requirements of Rule 23. *See, e.g.*, *Blackie*, 524 F.2d at 901, n.17; *Clark v. Watchie*, 513 F.2d 994, 1000 (9th Cir. 1975) ("If the trial judge has made findings as to the provisions of the Rule and their application to the case, his determination of class status should be considered within his discretion.").

## IV. DISCUSSION

Defendant does not dispute that the "numerosity," "typicality," or "adequacy" requirements for class certification under Rule 23(a)(1), (3), or (4) have been met. Dkt. # 29 at 14. Defendant argues, however, that Plaintiff fails to meet the "commonality" requirement under Rule 23(a)(2) and the "predominance" and "superiority" prongs of Rule 23(b)(3). The Court addresses each argument below.

### A. COMMONALITY

To establish commonality, a plaintiff must demonstrate that the class members "have suffered the same injury." *Falcon*, 457 U.S. at 157. Class members must assert a common contention that is capable of class-wide resolution. 564 U.S. at 350. Specifically, the determination of the truth or falsity of the contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court held that certification was not appropriate for a putative class of female employees alleging sex discrimination against their employer because they failed to show a general policy or practice of discrimination that affected all putative class members to establish commonality. *Id.* at 353. The putative class of about one and a half million plaintiffs alleged that local supervisors discriminated against them based on sex in matters of pay and promotion. *Id.* at 342. The Court held that, without strong evidence supporting a company-wide policy of discrimination or other common basis for these employment decisions across in individual stores across the country, there was no common answer that could resolve the matter. *Id.* at 353-54.

In the wage and hour context, the inquiry surrounding commonality is "whether the entire class was injured by the same allegedly unlawful wage and hour practice." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. 2015). Here, Plaintiff alleges a single course of conduct by Defendant with respect to all putative class members: non-payment of prevailing wage to inspectors of fire alarm, sprinkler, and suppression systems. Defendant concedes that it does not pay its inspectors prevailing wage. And Defendant does not claim to pay prevailing wage to some inspectors or pay prevailing wage contingent upon a specific activity required in a particular inspection. Instead, Defendant says it has no obligation to pay a prevailing wage at all and applies a uniform policy of non-payment to all inspectors in the putative class.

It is this policy that Plaintiff challenges, and resolution of this question would address the validity of claims of all inspectors in the defined class. The core question here is whether inspectors are covered under the PWA—that is, whether inspectors use tools or conduct manual labor in the course of their inspections, making them "laborers" or "mechanics" entitled to prevailing wage under the statute. No further individual factors would be necessary to resolve this question. Once this question is decided, the only remaining issue would be how much is owed to the inspectors.

Of course, determination of damages might require some individual calculation, but this Court has held that the "overwhelming weight of authority holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate." *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 436 (W.D. Wash. 2000) (internal quotation marks and citation omitted). Indeed, the Ninth Circuit has held that the amount of damages is "invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905. The Court therefore finds that Plaintiff has established commonality under Rule 23(a)(2).

**B. PREDOMINANCE**

With the four conditions of Rule 23(a) satisfied, the Court considers the remaining requirements of "predominance" and "superiority" under Rule 23(b)(3). To meet the predominance requirement, common questions of law and fact must be "a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). The court must compare "the quality and import of common questions to that of individual questions." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020). "[M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Even if there are important questions affecting only individual members of the proposed class, if a common question will ultimately drive the resolution, then the class is "sufficiently cohesive to warrant adjudication by representation." *Id.* (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In *Anchem Products v. Windsor*, the Supreme Court held that class certification in an asbestos-claims settlement was inappropriate because disparities between putative class members undermined the predominance requirement of Rule 23(b)(3). 521 U.S. at 597. The Court noted several differences between members of this putative class of hundreds of thousands, if not millions, of asbestos-exposed individuals: (1) the wide range of putative class members' exposure to asbestos; (2) significant variations in the resulting injury, ranging from lung cancer, mesothelioma, and disabling asbestosis to no physical injury; (3) whether individuals smoked cigarettes, thereby complicating the causation inquiry; and (4) differences in state law in adjudicating asbestos claims. *Id.* at 597, 624. While all putative class members had been exposed to asbestos products supplied by defendants, this commonality was outweighed by "the greater number of

questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions." 521 U.S. at 624.

To support its argument against predominance, Defendant cites *Levias v. Pacific Maritime Association*, No: 2:08-cv-01610-JPD, 2010 WL 358499, at *7 (W.D. Wash. Jan. 25, 2010), a wage claim case in which a court denied class certification based on a finding that "individual questions predominate over any common questions," Dkt. # 29 at 22. This reliance is misplaced. Plaintiffs in *Levias* were longshore workers seeking compensation for pre-shift travel, wait, and work time from different employers for whom they performed various longshore job assignments with "different routines, procedures, and pay practices." *Id.* at *1. These facts are distinct from the facts at issue here, where putative class member are all employees of a single employer who perform the same job and are paid the same amount pursuant to a common contract. Individual questions do not predominate over common ones here.

Indeed, Defendant does not distinguish between inspectors: Defendant does not assert that some of its inspectors might use tools in the course of an inspection while others do not. Nor does Defendant contend that some inspectors might perform manual labor during an inspection while others do not. Defendant instead argues that inspections generally do not require the use of tools or manual labor, and therefore, the label of "laborer" or "mechanic" for purposes of PWA coverage is inappropriate for *all* inspectors. Even if Defendant is correct that some inspectors have never engaged in "manual labor" and have never used tools in an inspection, this alone does not defeat class members claims. As the Ninth Circuit has held, "[e]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Torres*, 835 F.3d at 1136; *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) ("[S]ome class members' claims will fail on the merits if and when damages are decided, a fact generally

irrelevant to the district court's decision on class certification."). The Court thus finds that questions of law or fact common to class members predominate over any questions affecting only individual members pursuant to Rule 23(b)(3).

**C. Superiority**

The Court next considers whether the class is superior to individual suits, *Amchem*, 521 U.S. at 615, and must compare alternative mechanisms of dispute resolution, *Hanlon*, 150 F.3d at 1023. With respect to the superiority of a class action to other forms of adjudication, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). A class action may, however, be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis that includes "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In arguing that class action is not superior to individual actions here, Defendant reiterates its predominance arguments.[1] Dkt. # 29 at 22. As discussed in detail above,

---

[1] Defendant also cites this Court's decision in *Brady v. Autozone*, No. 2:13-cv-01862, 2018 WL 3526724 (W.D. Wash. July 23, 2018), *appeal dismissed*, 960 F.3d 1172 (9th Cir. 2020) in support of its superiority argument, leaning on its finding that "questions of both liability and damages are highly individualized." Dkt. # 29 at 24. Defendant's reliance is again misplaced. In *Brady*, the plaintiff sued his employer for unpaid wages for statutorily mandated meal breaks that the employer allegedly withheld from employees. 2018 WL 3526724, at *1. The employer presented extensive evidence demonstrating a range of reasons why an individual may not have received a meal break, including an employee's waiver thereof. *Id.* at 4. Whether the employer withheld wages from an employee in violation of the statute thus required an individualized analysis of the particular reason each employee missed a meal break. *Id.* The Court was correct in concluding that the individualized analysis required for every putative class member "would make the class proceeding unmanageable." *Id.* at 6. The absence of analogous facts requiring individualized analyses here, however, render the finding in *Brady* inapplicable.

the Court does not find that individual questions predominate over common questions of law or fact.

Defendant also suggests that a superior alternative to resolving this matter is through the complaint procedures of the Department of Labor & Industries pursuant to RCW 39.12.065. Dkt. # 29 at 24. But as noted by Plaintiff (Dkt. # 35 at 12), such a complaint concerning nonpayment would need to be filed "with the department of labor and industries no later than sixty days from the acceptance date of the public works project." RCW 39.12.065. Given Plaintiff's allegations of non-payment of prevailing wages over several years, the Department of Labor & Industries would not provide an alternative forum for adjudication. Dkt. # 35 at 12.

Finally, the Court is unpersuaded that any difficulties of managing this putative class action sufficiently outweigh the judicial economy of resolving all claims in one stroke. Here, the resolution of predominantly common questions would most efficiently be achieved in a class action. The Court therefore finds that a class action is superior to other methods for fairly and efficiently adjudicating the dispute.

## V. CONCLUSION

For the reasons stated above, the court **GRANTS** Plaintiff's motion for class certification. The Court **GRANTS** Plaintiff Martin's request to be designated as Class Representative, as his claims are typical and thereby representative of the class. The Court also designates attorneys Adam J. Berger, Jamal Whitehead, and Lindsay Halm of Schroeter Goldmark & Bender as Class Counsel. The Court orders that notice of this action be provided to the class.

Dated this the 17th day of August, 2020.

The Honorable Richard A. Jones
United States District Judge